NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| TASTY-TRIM, INC., : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> McNEIL NUTRITIONALS, LLC (a : <br> Johnson & Johnson company), : <br> : <br> Defendant : | Civil Action No. 07-cv-5987 (PGS) <br><br> **OPINION** |

**SHERIDAN, U.S.D.J.**

Defendant, McNeil Nutritionals, LLC ("McNeil") moves for summary judgment of non-infringement of the process patent held by plaintiff, Tasty-Trim, Inc. ("Tasty-Trim"). McNeil asserts that, because the process by which it creates its product, Splenda for Coffees Blend, is not the same as the process patented by Tasty-Trim, it cannot be found, as a matter of law, to have infringed on Tasty-Trim's process patent. For the reasons that follow, McNeil's motion will be denied.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

McNeil, a wholly owned subsidiary of Johnson & Johnson, is responsible for the production and distribution of Splenda (the brand of the artificial sweetener sucralose), and since 2006, the production of the Splenda Flavors for Coffee sweetener. As early as 2002, Tasty-Trim

1

began the process of developing a combination artificial sweetener/flavorer in solid form for hot beverages such as coffee. During the process of this development, in 2003, Tasty-Trim representatives contacted McNeil in an attempt to secure McNeil's permission to use Splenda instead of aspartame as part of its process. In so doing, Tasty-Trim alleges that it showed McNeil the exact process by which it planned to produce its sweetener/flavorer mixture. This process, for which a patent was issued on August 21, 2007, involves the following three-step process:

>1) milling together agglomerated carrier with an encapsulated flavoring agent;
>
>2) preparing a dry blend of the milled mixture and a sweetening agent; and
>
>3) milling the dry blend.

Beginning in 2004, Tasty-Trim pursued both a process and a formula patent for its mixture. The formula patent was ultimately rejected by the U.S. Patent & Trademark Office.[1]

---

[1] According to Defendant's Statement of Undisputed Facts ("SUF"), Randy Seltzer, Veronica Marano, and David Skowronski filed U.S. Patent Application Serial Number 10/791,119 ("'119 application") on March 1, 2004. (SUF ¶ 1). This application was requested to be abandoned on May 27, 2004. (SUF ¶ 2). Abandonment was granted on June 30, 2004. (SUF ¶ 3). On May 12, 2004, U.S. Patent Application Serial Number 10/844,935 ("'935 application") was filed as a continuation-in-part of the '119 application. (SUF ¶ 4). Three independent claims were contained within the application: 1, 7, and 20. (SUF ¶ 4). Independent claim 1 stated that the patent was for "[a]n artificial sweetener comprising (a) a carrier made of a substantially non-nutritive ingredient; (b) a flavoring agent; and (c) a non-nutritive sweet agent." (SUF ¶ 5). Independent claim 7 stated that the patent application also contemplated "[a]n artificial sweetener comprising (a) a carrier; (b) a bulking agent; (c) a sweet agent; and (d) a flavoring agent." (SUF ¶ 6). Finally, Independent Claim 20 contemplated the method by which the artificial sweetener would be created. The Claim stated, "[a] method for preparing a sweetening composition comprising: (a) milling together a carrier and a flavoring agent ; (b) preparing a dry blend of the milled mixture and a sweet agent; and (c) milling the dry blend." (SUF ¶ 7).
The '935 patent was ultimately rejected on June 8, 2006. (SUF ¶ 8). An amendment was filed on September 11, 2006, in which Independent Claim 20 was presented again, and in which the argument was raised that the process was novel because this was a dry blend (as opposed to wet blends previously patented) of flavor and artificial sweetener had been presented. (SUF ¶

However, after amending its application, Tasty-Trim was ultimately granted a process patent for its mixture on August 1, 2007, with an issue date of August 21, 2007.[2] Tasty-Trim filed its one-count infringement complaint on December 17, 2007, with an amendment as of right on January 23, 2008. McNeil filed an answer, as well as a counterclaim for declaratory judgment of non-infringement and invalidity of Tasty-Trim's process patent, on March 10, 2008. Thereafter, on May 30, 2008, McNeil moved for summary judgment of non-infringement. After a limited period of discovery, Tasty-Trim filed its opposition to the motion on January 30, 2009.

## DISCUSSION

McNeil argues that its process, which involves only one step–placing its ingredients in either a ribbon blender or a plow blender for a certain period of time– is not the same as Tasty-Trim's three step process, and therefore, it cannot be held to have infringed upon Tasty-Trim's process patent. In further support of this theory, McNeil asserts that the process of milling and the process of blending are wholly separate and distinct elements under the Tasty-Trim patent. McNeil argues that, while not terms of art, the terms milling and blending do not mean the same thing in common usage or in the art, and the very fact that these steps are listed separately in Tasty-Trim's process patent application lends credence to a finding that McNeil's process is not the same as Tasty-Trim's process.

In opposition to this motion, Tasty-Trim argues that the terms milling and blending are not mutually exclusive. Further, Tasty-Trim asserts that, under the Doctrine of Equivalence,

---

12). The language of the claim itself was not amended. This claim was ultimately accepted by the Patent Office.

[2] U.S. Patent No. 7258885.

McNeil's one-step process is functionally the same as Tasty-Trim's three-step process. Tasty-Trim cites, its expert's report,[3] that the particles of sweetening agent, flavoring agent, and bulking agent employed in McNeil's mixture differ significantly in size (by a factor of 100 to 1) when placed in the blender. Tasty-Trim further alleges that the particles that come out of the blender after being mixed are far closer in size to one another (a factor of 10 to 1). As a result, says Tasty-Trim, some milling must take place while the components are in the blender, and the processes are therefore the same.

## I. MOTION FOR SUMMARY JUDGMENT- STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate when the moving party demonstrates that there is no genuine issue of material fact, and that the evidence establishes the movant's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A genuine issue of fact exists only if a reasonable jury could return a verdict for the non-movant, and it is material only if it may affect the outcome of the suit based upon substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (*quoting Anderson*, 477 U.S. at 255).

---

[3] The report of Tasty-Trim's expert, William A. May, Ph.D., along with May's *curriculum vitae* and other exhibits, were appended directly to plaintiff's opposition brief. Though not accompanied by a certification or affidavit attesting to the authenticity of the report as required pursuant to Fed. R. Civ. P. 56(e)(2), because no opposition has been raised by McNeil to the filing of the report in this manner, the Court will accept as true, for the purposes of this motion, the fact that the report was written by May himself.

After the movant has satisfied this burden, the non-moving party must establish that a genuine issue of material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). Rather, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgement. *Anderson*, 477 U.S. at 247-48.

## II. THE BURDEN OF PROOF IN PATENT INFRINGEMENT CASES

It is well-established that "[t]he patentee has the burden of proving infringement by a preponderance of the evidence" in patent cases. *Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1367 (Fed. Cir. 2004); *see also Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999). Review of an infringement claim is a two-step inquiry. *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1406 (Fed. Cir. 2004). "The first step is a proper construction of the meaning and scope of the claims." *Id.* (citing *Anchor Wall Sys. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1306 (Fed. Cir. 2003)). This is, of necessity, a question of law. *Id.* (citing *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1451 (Fed. Cir. 1998) (en banc)). The second step in the analysis "requires a comparison of the properly construed claim to the accused [method]." *Id.* Analysis at this stage is a question of fact. *Id.*

Unless otherwise defined in the patent documents, "the words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1582 (Fed. Cir. 1996));

*see also Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1299 (Fed. Cir. 1999); *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998). Courts construe the ordinary meaning as "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1313. Further, "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* With respect to "straightforward non-technical terms," the Federal Circuit has advocated the use of dictionary definitions for proper claim construction. *See id.* at 1314.

      Once the claims have been construed by the Court, the second step of the infringement determination is a comparison of the properly construed claims to the allegedly infringing method. In order for there to be a finding of direct infringement of a method claim, each and every step of the claimed method must be performed by the allegedly infringing party. *BMC Resources, Inc. v. Paymentech, LP*, 498 F.3d 1373, 1378-79 (Fed. Cir. 2007); *Power Mosfet*, 378 F.3d at 1406. Specifically, the "claim to a process comprising the step A followed by step B followed by step C defines, as a matter of law, only the A-B-C process and one cannot properly speak of any single step as being 'claimed', for it is not; all that is claimed is the process consisting of the *combination* of all three steps." *General Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272, 1274 (Fed. Cir. 1992).

      This process is subject to what the Supreme Court has termed the Doctrine of Equivalents. Originating with the decision of *Winans v. Denmead*, 56 U.S. 330 (1854), and reaffirmed in more modern terms nearly a century later in *Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co.*, 339 U.S. 605 (1950), the Supreme Court has articulated a clear standard for a

determination of infringement even where the exact process, method, or formula is not duplicated in its exact order. While the Court in *Graver* pointed out that "[i]n determining whether an accused device or composition infringes a valid patent, resort must be had in the first instance to the words of the claim," it nevertheless observed that "to permit imitation of a patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing." *Id.* at 607.

Recognizing that "[s]uch a limitation would leave room for – indeed encourage – the unscrupulous copyist to make unimportant and insubstantial changes and substitutions in the patent," the Court adopted the Doctrine of Equivalents to prevent such behavior and maintain the integrity of patent protection despite the requirement of enumerating claims when applying therefor. *Id.* As the Court aptly stated:

> To temper unsparing logic and prevent an infringer from stealing the benefit of an invention a patentee may invoke this doctrine to proceed against the producer of a device if it performs substantially the same function in substantially the same way to obtain the same result. The theory on which it is founded is that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape. The doctrine operates not only in favor of the patentee of a pioneer or primary invention, but also for the patentee of a secondary invention consisting of a combination of old ingredients which produce new and useful results, although the area of equivalence may vary under the circumstances.

*Id.* at 608. Realizing that circumstances could arise where literal infringement upon a patented invention had occurred, but where a finding of actual infringement based on the facts presented would be an absurd result, the Court further stated:

7

> The wholesome realism of this doctrine is not always applied in favor of a patentee but is sometimes used against him. Thus, where a device is so far changed in principle from a patented article that it performs the same or a similar function in a substantially different way, but nevertheless falls within the literal words of the claim, the doctrine of equivalents may be used to restrict the claim and defeat the patentee's action for infringement.

*Id.* at 608-09.

More than four decades later, and after an amendment to the Patent Act, 35 U.S.C. § 100 *et seq.*, the Court reaffirmed and clarified the scope of the Doctrine of Equivalents in *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17 (1997). There, the Court clarified the holding of *Graver* by stating that "[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson*, 520 U.S. at 29. The question in such cases, opined the Court, is: "[d]oes the accused product or process contain elements identical or equivalent to each claimed element of the patented invention?" *Id.* at 40. Therefore, the answer to the question can be ascertained by conducting "[a]n analysis of the role played by each element in the context of the specific patent claim . . . as to whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element." *Id.*

While the *Warner-Jenkinson* Court did not decide the question of whether the Doctrine of Equivalents was a question of fact or one of law, as such was not before it, the Court did state in dicta that "[t]he Federal Circuit held that it was for the jury to decide whether the accused process was equivalent to the claimed process." *Id.* at 38. The Court went on to state that

"[t]here was ample support in [its] prior cases for that holding." *Id.* Finally, the Court stated in dicta that "[w]here the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment," in accordance with Rule 56. *Id.* at 39 n.8. *See also Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722 (2002).

### III. MCNEIL'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

McNeil bases its motion for summary judgment of non-infringement on the fact that its process, which consists of one step, is not identical to the process patented by Tasty-Trim, which consists of three steps. An abundance of case law indicates that the processes need not be wholly identical to be equivalent under the Doctrine of Equivalents. Therefore, the argument submitted by McNeil cannot be adopted on its face as a matter of law. Instead, the processes must be examined pursuant to the two-step test outlined in *Power Mosfet*, 378 F.3d at 1406.

The first step is to give the proper construction of the meaning and scope of the claims in Tasty-Trim's process patent. The process consists of 1) milling together agglomerated carrier with an encapsulated flavoring agent; 2) preparing a dry blend of the milled mixture and a sweetening agent; and 3) milling the dry blend. Viewing the facts submitted in a light most favorable to the non-moving party, Tasty-Trim, the patent appears to protect the process of grinding up particles of carrier and flavoring agent, the blending of those components with the sweetener, and a final milling of all the components after the blending.

The second step is to compare the process to that which allegedly infringes upon it. Here, the process utilized by McNeil is a one-step process which calls for all the ingredients– flavor, sweetener, and carrier– to be mixed together for a certain period of time. The period of time

9

differs based upon the flavoring agent added to the mix.

It has been submitted by both parties that the terms "milling" and "blending" are not terms of art, and therefore, in accordance with case law, the terms are to be given their plain and ordinary meaning. *Graver*, 339 U.S. at 607. Thus, the meaning submitted by McNeil, which is a dictionary definition, defines the term "mill" as "[t]o grind, pulverize, or break down into smaller particles." (SUMF ¶ 19). Tasty-Trim submits a similar definition, stating that milling is defined for the purposes of its expert's report as "a process that involves some form of grinding, and consequently results in a reduction in particle size." (May Report at 1). McNeil defines the term "blend" as "[t]o combine or mix so that the constituent parts are indistinguishable from one another." (SUMF ¶ 22). Tasty-Trim does not specifically define "blending," but does indicate that such a process is used to form a uniform mixture of ingredients. (May Report at 2).

Tasty-Trim's expert indicates in his report that milling and blending are not mutually exclusive processes. According to the report, a process that mixes ingredients together at the same time as it reduces the size of the particles of the component parts may be both milling and blending. In addition, according to Tasty-Trim's expert report, the size of the particles of the agglomerated carrier agent, dextrose or maltodextrin, that go into McNeil's product are 100 times the size of the particles of the sweetening agent, sucralose. However, after the blending process, the largest particle in the mixture is no greater than ten times the size of any other in the mix. Thus, states May, there is some reduction in particle size while the mix is in the blender, and therefore, some milling is going on.

If the statements of the non-movant are to be believed, and if all justifiable inferences therefrom are to be drawn in its favor, *see Marino*, 358 F.3d at 247, then there is a genuine issue

10

of material fact as to whether defendant's process infringes upon Tasty-Trim's process patent. Given the evidence of alleged reduction in particle size resulting from the one-step blending process McNeil employs, and given the differing specific amounts of time that each individual flavor mixture of Splenda Flavors for Coffee must be blended in order to produce the desired result, it would certainly not be unreasonable for a trier of fact to conclude that the one-step process is the equivalent of Tasty-Trim's three-step process. *See Warner-Jenkinson*, 520 U.S. at 38-39; *Anderson*, 477 U.S. at 248. As a result, summary judgment of non-infringement is inappropriate, and is therefore denied.

## **CONCLUSION**

For the foregoing reasons, McNeil's motion for summary judgment of non-infringement is denied, as it is clear that there is a genuine issue of material fact at issue in this case.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

March 30, 2009